# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

Nation Wide Products LLC,  §
 §
     Plaintiff,  §
 §
v.  §
 §
 §    Civil Action No. <u>4:10-cv-880</u>
MJC America Ltd. (d/b/a Soleus Air  §
International),  §
MJC America Holdings Co., Inc., and  §
Wal-Mart Stores, Inc.  §
 §
     Defendants.

<u>**NATION WIDE PRODUCTS LLC'S MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT WAL-MART STORES, INC.**</u>

4:10-cv-880

90247374.3

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  FACTS .............................................................................................................. 2

III. ARGUMENTS AND AUTHORITIES.............................................................. 4

    A.   Nation Wide is Likely to Succeed on the Merits ................................. 4

        1.   Nation Wide is Likely to Prove that the Anymount Bracket Infringes One or More Claims of the '816 Patent..................... 5

        2.   The '816 Patent is Likely to Withstand Any Validity Challenges............. 7

    B.   Nation Wide is Likely to Suffer Irreparable Harm in the Absence of a Preliminary Injunction ........................................................................ 7

    C.   The Balance of the Equities Tips in Nation Wide's Favor ................... 9

    D.   Preliminarily Enjoining Walmart from Infringing the '816 Patent is in the Public Interest ............................................................................... 10

IV.  CONCLUSION................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Labs. v. Andrx Pharms., Inc.,*
   452 F.3d 1331 (Fed. Cir. 2006)....................................................................................11

*Amazon.com, Inc. v. barnesandnoble.com, inc.,*
   239 F.3d 1343 (Fed. Cir. 2001)......................................................................................5

*Atlas Powder Co. v. Ireco Chems.,*
   773 F.2d 1230 (Fed. Cir. 1985)................................................................................7, 8, 9

*Baker Hughes Inc. v. Nalco Co.,*
   676 F. Supp. 2d 547 (S.D. Tex. 2009) ...........................................................................8

*H.H. Robertson, Co. v. U.S. Deck, Inc.,*
   820 F.2d 384 (Fed. Cir. 1987).............................................................................5, 7, 8, 10

*Hybritech Inc. v. Abbott Labs.,*
   849 F.2d 1446 (Fed. Cir. 1988).....................................................................................4

*Lund. Indus, Inc. v. GO Indus., Inc.,*
   938 F. 2d 1273 (Fed. Cir. 1991).....................................................................................5

*Smith Int'l, Inc. v. Hughes Tool Co.,*
   718 F.2d 1573 (Fed. Cir. 1983)....................................................................................11

*Titan Tire Corp. v. Case New Holland, Inc.,*
   566 F.3d 1372 (Fed. Cir. 2009)................................................................................4, 5, 7

*Univ. of Tex. v. Camenisch,*
   451 U.S. 390 (1981).................................................................................................8, 9

*Winter v. Natural Res. Def. Council, Inc.,*
   129 S. Ct. 365 (2008) ................................................................................................4

**RULES AND STATUTES**

35 U.S.C. § 282........................................................................................................4, 7

35 U.S.C. § 283............................................................................................................1

Federal Rule of Civil Procedure 65(a) ..............................................................................1

Federal Rule of Civil Procedure 65(c) .............................................................................12

Pursuant to Federal Rule of Civil Procedure 65(a) and 35 U.S.C. § 283, Plaintiff Nation Wide Products LLC ("Nation Wide") files this Motion for Preliminary Injunction ("Motion") seeking to immediately enjoin Defendant Wal-Mart Stores, Inc. ("Walmart") from willfully infringing 5,636,816 ("the '816 Patent").

## I.   INTRODUCTION

Defendant Walmart is selling (and probably importing into the United States) a knockoff product that clearly infringes the '816 Patent and only a preliminary injunction can prevent this infringement from causing devastating and irreparable harm to the patent owner. The infringing product is labeled with what would appear to be the trade name "Anymount," though there is no additional information on the infringing product, its packaging, or the enclosed installation instructions from which one could identify the manufacturer of the infringing product. In fact, the only clue as to the source of the product is the phrase "MADE IN CHINA" emblazoned on the end of the box.

The complete absence of anything on the infringing product to indicate the source of the product, coupled with the belief that Walmart previously sold a private-labeled version of Nation Wide's patented Universal Air Conditioner Support ("Universal Support") in the United States, suggests that Walmart itself commissioned the manufacture of these knockoff products from a Chinese manufacturer in order to undercut Nation Wide's pricing structure. The primary problem with implementing such a business strategy in this case is that the United States has granted Nation Wide the right to exclude any person from making, selling, or importing into the United States its patented invention and Nation Wide is hereby asking the Court to enjoin Walmart from doing just that.

90247374.3

1

## II.    FACTS

In 1993, when installing a window unit air conditioner in his home, Stewart Burton found that although the mounting instructions called for the provision of external support for the air conditioning unit, no support was furnished with the air conditioner. Burton Decl. ¶ 2, App. 1. After determining that available external support products were limited and failed to offer a support option that was not dependent on the type of window, window sill, building walls, air conditioning unit, etc., or that could be installed easily without requiring the insertion of fasteners into the exterior surface of the building wall, Mr. Burton recognized a need for a universal support that could be used to provide external support for a wide variety of window air conditioner units in a variety of mounting conditions. *Id.* ¶ 3, App. 1. The need for a reliable external and universal support option was made all the more evident by the dangers associated with air conditioning units falling from windows as a result of makeshift support or otherwise improperly secured window unit.

In late 1994 through early 1995, Mr. Burton spent a great deal of time taking measurements of various windows and window seals and air conditioning units to determine the variety of situations that might be encountered when installing a window air conditioning unit and developed the concept that would eventually be developed into the invention disclosed in U.S. Patent No. 5,636,816 ("the '816 Patent") and what would become the Universal Air Conditioner Support ("Universal Support"). *Id.* ¶ 4, App. 2. During that time, Mr. Burton enlisted the services of Robert Hellman to assist in refining the design and functionality of the Universal Support. *Id.* ¶ 5, App. 2. On October 25, 1995, Mr. Burton and Mr. Hellman, by and through their attorneys, filed a patent application for the Universal Air Conditioner Mounting

2

Bracket and Method.[1] *Id.* ¶ 6, App. 2. That patent application issued as the '816 Patent on June 10, 1997. *See* Ex. C to Original Complaint, the '816 Patent. Since it issued, the validity of the '816 Patent has never been challenged in either federal court or in the U.S. Patent and Trademark Office. Burton Decl. ¶ 8, App. 2. As of the time of filing of this Motion, the '816 Patent expires in less than five years. *See* Ex. C to Original Complaint, the '816 Patent (application filed on October 25, 1995).

Since the first Universal Support was sold in 1996 by Mr. Burton's company, Outland Engineering, up until the time that Mr. Burton assigned his rights to the '816 Patent to Nation Wide in September 2009, Mr. Burton worked tirelessly to earn loyal customers throughout the HVAC industry. Burton Decl. ¶ 9, App. 2. Through Mr. Burton's efforts and the nature of the comprehensive solution embodied by the Universal Support, the Universal Support has been adopted by retailers, resellers, distributors, contractors, and home improvement chains as one of the preferred products used to provide external support to window unit air conditioners. *Id.* ¶ 10, App. 2.

In September 2009, Mr. Burton assigned his rights in the '816 Patent and in the Universal Support product in general to Nation Wide. Darby Decl. ¶ 3, App. 4. Nation Wide (and previously Outland Engineering) not only sells the Universal Support through distribution channels, but it also private labels the Universal Support to third parties using identical packaging with the exception of the advertising insert included in the product packaging cover. *Id.* ¶ 4, App. 4. The private-labeled versions are properly marked with the '816 Patent number. *Id.* ¶ 5, App. 4. Upon information and belief, Walmart purchased and sold private-labeled versions of the Universal Support in at least the years 2003 and 2004. Walmart sells the

---

[1] On October 19, 1995, Mr. Hellman assigned his interest in what would become the '816 Patent to Mr. Burton. Burton Decl. ¶ 7, App. 2.

knockoff Anymount Universal (Small/Medium) Air Conditioner Mounting Bracket ("Anymount Bracket") in various stores throughout the United States. Regitz Decl. Ex. A, Anymount Bracket & Walmart Receipt, App. 9. Counsel for Nation Wide unsuccessfully engaged in extensive due diligence to identify the actual manufacturer of the Anymount Bracket. Regitz Decl. ¶ 4, App. 6. The absence of any identifying information, however, coupled with the fact that Walmart is selling the Anymount Bracket in its stores, suggests that Walmart commissioned the manufacture of this knockoff item that it is now selling in the United States.

## III.   ARGUMENTS AND AUTHORITIES

In order to prevent further willful infringement of the '816 Patent by Walmart, a preliminary injunction must be issued. The Patent Act expressly authorizes injunctive relief in patent cases. 35 U.S.C. § 282 (2006). A patentee seeking a preliminary injunction must show that (1) the patentee is likely to succeed on the merits, (2) the patentee is likely to suffer irreparable harm if a preliminary injunction is denied, (3) the balance of the equities tips in the patentee's favor, and (4) a preliminary injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009) (*Winter* test is definitive for purposes of determining whether to grant a preliminary injunction in a patent infringement case). None of these factors, taken individually, is dispositive, nor are all of the factors necessarily prerequisites for preliminary injunctive relief. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451, 1457 (Fed. Cir. 1988). Once the relevant factors are considered, it is clear that Nation Wide is entitled to the requested injunctive relief.

### A.   Nation Wide is Likely to Succeed on the Merits.

Considering the blatant knockoff of the Universal Support and the clear-cut infringement of the '816 Patent by the Anymount Bracket, Nation Wide is likely to succeed on the merits of

90247374.3

4

its claims against Walmart. To establish that the patentee is likely to succeed on the merits in a patent infringement case, the patentee must show that it is likely to (1) prove infringement and (2) withstand any challenges asserted by the accused infringers to the validity of the patent. *Titan Tire Corp.,* 566 F.3d at 1375-76. Determining whether the patentee is likely to prove infringement or whether the patents-at-issue are likely to withstand validity challenges requires an analysis on a claim-by-claim basis. *Amazon.com, Inc. v. barnesandnoble.com, inc.,* 239 F.3d 1343, 1351 (Fed. Cir. 2001).

      **1.**      **Nation Wide is Likely to Prove that the Anymount Bracket Infringes One or More Claims of the '816 Patent.**

Nation Wide will likely prove that the Anymount Bracket infringes one or more claims of the '816 Patent in this case. A patentee is not required to prove infringement in order to obtain preliminary injunctive relief, but rather must merely show that it is likely to meet its burden at trial of proving infringement by a preponderance of the evidence. *H.H. Robertson, Co. v. U.S. Deck, Inc.,* 820 F.2d 384, 390 (Fed. Cir. 1987). The proper analysis to determine whether there is a likelihood of infringement requires comparing of the accused product to the patent claims. *Lund. Indus, Inc. v. GO Indus., Inc.,* 938 F. 2d 1273, 1275 (Fed. Cir. 1991).

Submitted in support of this Motion is the Declaration of Hal Watson Jr, Ph.D., P.E., who is a professor emeritus of mechanical engineering at Southern Methodist University. *See* Watson Decl. Ex. A, Watson Curriculum Vitae, App. 13–21. Dr. Watson has analyzed the asserted claims of the '816 Patent compared to the Anymount Bracket and has determined that it infringes at least claim 1 of the '816 Patent. *See* Watson Decl. ¶ 6, App. 11. Attached as Exhibit B to Watson Declaration is a claim chart establishing that the Anymount Bracket infringes claim 1 of the '816 Patent. *See* Watson Decl. Ex. B, App. 23-40.

Even without the benefit of Dr. Watson's expert conclusion of infringement, the claim chart attached to Dr. Watson's expert report is conclusive with respect to Walmart's infringement.[2]   When compared with claim 1 of the '816 Patent, the Anymount Bracket is a mounting bracket for support of a window air conditioner on a window sill installed in a window opening in a wall of a building. *See id.* at App. 23.   As shown on the box cover and installation instructions, the Anymount Bracket has a generally horizontal support member for supporting the portion of the window air conditioner that extends outside of the building, with the proximal end being for attachment to the window sill. *See id.* at App. 24.   The Anymount Bracket also has a foot member to rest against an outside surface of the wall below the window opening. *See id.* at App. 25.   The installation instructions also clearly show that the Anymount Bracket has a strut member with its upper end attached to an attachment point near the distal end of the generally horizontal support member and with its lower end attached to the foot member. *See id.* at App. 26.   Finally, as established in several pages of the installation instructions, the Anymount Bracket has a means to selectively adjust the height of the proximal end of the generally horizontal support member about the window sill, depending on the construction of the window sill and any obstacles in the window. *See id.* at App. 27-30.

Dr. Watson's expert conclusion of infringement clearly shows that Nation Wide is likely to prove infringement in this case.   Further, an objective comparison of the Anymount Bracket with claim 1 of the '816 Patent, as set forth in the claim chart attached to Dr. Watson's declaration, confirms that Nation Wide has carried its burden of showing that it is likely to prevail in its infringement claim against Walmart.

---

[2]   For purposes of assessing the merits of this Motion, the plain meaning of the claim terms in claim 1 (for this invention in the mechanical arts) is sufficient to establish likelihood of infringement so no formal claim construction is necessary at this stage of the litigation.

### 2.   The '816 Patent is Likely to Withstand Any Validity Challenges.

The '816 Patent is presumed to be valid and is likely to withstand any validity challenges that may be asserted. Patents issued by the U.S. Patent and Trademark Office are presumed to be valid upon issuance. 35 U.S.C. § 282 (2006). A patent enjoys a presumption of validity at every stage of litigation, including during preliminary injunction proceedings. *Titan Tire Corp.*, 566 F.3d at 1377. A patentee will therefore carry its burden that an asserted patent is likely to withstand any validity challenges unless the accused infringer offers evidence sufficient to raise a substantial question of invalidity. *Id.* at 1377-78.

Nation Wide is aware of no facts to suggest that the '816 Patent is invalid for any reason. The '816 Patent issued over thirteen years ago and the air conditioning industry has effectively acquiesced in the validity of the '816 Patent, which has never been challenged in federal court or in the U.S. Patent and Trademark Office. *See* Burton Decl. ¶ 8, App. 2. For purposes of determining whether a preliminary injunction should issue, the '816 Patent enjoys a presumption of validity that supports the likelihood that it will withstand any validity challenges that may be asserted, unless Walmart can establish a substantial question of invalidity. *See Titan Tire Corp.*, 566 F.3d at 1377-78. The only reasonable conclusion that can be drawn, therefore, is that the '816 Patent is likely to withstand any validity challenges that may be asserted.

### B.   Nation Wide is Likely to Suffer Irreparable Harm in the Absence of a Preliminary Injunction.

If a preliminary injunction does not issue to prevent Walmart from further engaging in infringing activities, Nation Wide is likely to suffer irreparable harm. Injunctive relief is authorized by the Patent Act for the reason that infringement may adversely affect a patentee in a manner not compensated by money. *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985); *see also H.H. Robertson, Co.*, 820 F.2d at 390 ("The opportunity to practice an

invention during the notoriously lengthy course of patent litigation may itself tempt infringers."). Direct competition between patentee and accused infringer favors a finding of irreparable harm. *Baker Hughes Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 553-54 (S.D. Tex. 2009). A preliminary injunction is issued to preserve the status quo until there can be a trial on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

There are several reasons why Nation Wide will suffer irreparable harm in the absence of a preliminary injunction. Sales of the Universal Support comprise approximately 25% of Nation Wide's gross revenue. *See* Darby Decl. ¶ 6, App. 5. In view of the '816 Patent, Nation Wide is the only legitimate manufacturer of this patented device. Any sale of the Anymount Bracket that Walmart makes, therefore, effectively comes at the expense of Nation Wide, which relies on sales of the Universal Support to maintain the viability of its business operations. This direct competition between Walmart and Nation Wide itself favors a finding of irreparable harm. *See Baker Hughes Inc.*, 676 F. Supp. 2d at 553-54. If Walmart continues to threaten the market for the Universal Support by selling its knockoff version in its stores, Nation Wide's entire business could be so adversely affected that a subsequent payment of money will not be able to fully compensate Nation Wide for the injury. *See Atlas Powder Co.*, 773 F.2d at 1233.

Further, as of the filing date of this Motion, the remaining enforceable term of the '816 Patent is less than five years. *See* Ex. C to Original Complaint, the '816 Patent (application filed on October 25, 1995). If Walmart continues to sell the patented invention while this litigation is pending, as the patent life of the '816 Patent marches steadily toward exhaustion, this will irreparably harm Nation Wide by effectively nullifying Nation Wide's exclusive patent rights during the final years of the promised exclusivity. *See H.H. Robertson, Co.*, 820 F.2d at 390. Allowing Walmart to ramp up its production of the Anymount Bracket and the associated

90247374.3

infringing sales, during the very time period that it should be prevented from doing so, will irreparably harm Nation Wide as it will be forced to directly compete with its own product years before it had anticipated.  Nation Wide's justified reliance on the patent rights granted by the United States will effectively be its undoing and will harm Nation Wide in predictable (and unforeseen) ways that will not be compensable in money as its entire commercial enterprise may be put in jeopardy. *See Atlas Powder Co.*, 773 F.2d at 1233.

The immediate enforcement of the '816 Patent will maintain the status quo, or at least return the market to the status quo before Walmart began selling the Anymount Bracket. *See Camenisch*, 451 U.S. at 395.  Nation Wide would at least be able to maintain its current market share, albeit a market share that would be significantly greater had the Anymount Bracket never been sold in competition with the Universal Support.  If Walmart is allowed to continue to offer the Anymount Bracket as a free rider on the technology invented and the market developed by Outland Engineering and Nation Wide, Walmart will be able to undercut Nation Wide's pricing structure because Walmart never had to bear the comparative expense to offer this patented technology to purchasers of its Anymount Bracket, and instead, presumably decided to commission a foreign entity to produce its knockoff version of the Universal Support. *See* Darby Decl. Ex. A, Anymount Bracket Box ("MADE IN CHINA").  The irreparable harm that is already being inflicted on Nation Wide as a result of Walmart's infringing activities favors immediate injunctive relief.

### C.   The Balance of the Equities Tips in Nation Wide's Favor.

When the equities in this case are properly considered, the scales tip in Nation Wide's favor and justify enjoining Walmart from further infringement of the '816 Patent. In balancing the equities, the court evaluates the magnitude of the threatened injury to the patentee, the injury

to the accused infringer if an erroneous preliminary injunction issues, and the strength of the patentee's showing that it is likely to succeed on the merits of its claim. *H.H. Robertson, Co., 820 F.2d at 390.*

In this case, the magnitude of the threatened injury to Nation Wide is enormous, as is detailed above in the discussion of the irreparable harm that will be done to Nation Wide in the absence of a preliminary injunction. While the strength of Nation Wide's showing that it is likely to succeed on the merits practically forecloses the possibility that a preliminary injunction could ever be "erroneous" under the present circumstances, any injury sustained by Walmart resulting from the injunction would be self-inflicted. Upon information and belief, in 2003 and 2004, Walmart sold private labeled versions of the Universal Support that were all properly marked with the '816 Patent. It is no coincidence that the manufacturer of the infringing Anymount Bracket (presumably Walmart) cannot be determined by examining the product itself, its product packaging, or the enclosed installation instructions, but yet the Anymount Bracket is being sold at Walmart stores. *See* Regitz Decl. Ex. A, Anymount Bracket & Walmart Receipt, App. 9. Should an erroneous preliminary injunction issue, Walmart will simply have to purchase the Universal Support from an authorized vendor until the case is finally resolved. Further, any "balancing of the equities" analysis must consider the importance of the Universal Support to the survival of this small privately-held company and weigh it against the relative insignificance of the Anymount Bracket to the world's largest retailer. Under any equitable analysis, the balance tips definitively towards Nation Wide and the issuance of an injunction.

### D.   Preliminarily Enjoining Walmart from Infringing the '816 Patent is in the Public Interest.

It is decidedly in the public interest to issue a preliminary injunction to prevent Walmart from further infringing the '816 Patent. In cases without any contravening considerations, the

public interest "is best served by enforcing patents that are likely valid and infringed." *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006); *see also Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("[P]ublic policy favors protection of the rights secured by the valid patents."). Further, when an accused infringer is aware of a patent, yet takes a calculated risk that it might infringe that patent, it will not "be heard to say that public policy is in its favor." *Smith Int'l, Inc.*, 718 F.2d at 1581.

As demonstrated above, Nation Wide has met its burdens of showing that Walmart's infringement will likely be proven by a preponderance of the evidence and that the '816 Patent is also likely to withstand any challenge to validity that Walmart may decide to assert. Enforcement of the '816 Patent by the issuance of a preliminary injunction, therefore, is in complete accordance with the public's interest in protecting the rights secured by valid patents. *See id.* The Universal Supports, and the private-labeled versions of the Universal Support that Walmart is believed to have sold in 2003 and 2004, were all properly marked with the '816 Patent, which put Walmart on notice of the patent. *See* Darby Decl. ¶ 6, App. 5. In any case, the similarity in the form and function of the devices also renders any argument that Walmart was unaware of Nation Wide's patented invention unavailing, so Walmart should not now be heard to argue that public policy somehow favors its continuing infringement of the '816 Patent. *See Smith Int'l, Inc.*, 718 F.2d at 1581.

## IV.   CONCLUSION

Nation Wide has established that the grant of a preliminary injunction is justified under the circumstances and asks the Court to enjoin Walmart from making, using, offering to sell, selling, or importing the Anymount Bracket into the United States. Nation Wide is willing and able to provide reasonable security under Federal Rule of Civil Procedure 65(c) should the Court

90247374.3

in its discretion determine that such security is warranted. Considering the strength of the evidence supporting the preliminary injunction, however, the posting of a nominal amount (e.g., $5,000.00) should be more than sufficient.[3] The preliminary injunction should be effective immediately.

Respectfully submitted this 18th day of November 2010,

_____

Brett C. Govett
Texas Bar No. 08235900
**Lead Attorney**
Michael B. Regitz
Texas Bar No. 24051238

FULBRIGHT & JAWORSKI L.L.P.
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201-2784
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
Email: bgovett@fulbright.com
Email: mregitz@fulbright.com

**COUNSEL FOR PLAINTIFF**
**NATION WIDE PRODUCTS L.L.C.**

---

[3] Considering the extensive scope of the harm presently being inflicted on Nation Wide by Walmart's infringement of the '816 Patent, should this Court deny Nation Wide's request for preliminary injunctive relief, Nation Wide asks this Court to order Walmart to post a security bond sufficient to protect Nation Wide against the ongoing and substantial damages that will be suffered if Walmart is allowed to continue infringing the '816 Patent while this litigation is pending.

90247374.3

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that a conference of counsel was not possible because Plaintiff Nation Wide Products, LLC filed and served its Motion for Preliminary Injunction Against Wal-Mart Stores, Inc. concurrently with the filing and serving of its Original Complaint. As the identity of Wal-Mart Stores, Inc.'s counsel could not be determined prior to filing or service of these pleadings, no conference was possible.

_____
Brett C. Govett

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the defendants are being served with the foregoing pleading and supporting documents (along with the Original Complaint and Summons) according to Federal Rule of Civil Procedure 5, with defendant Wal-Mart Stores, Inc. being served through its registered agent in Texas and with the MJC defendants being served through the Texas Secretary of State.

_____
Brett C. Govett

90247374.3

13